**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| BOKF, N.A., as indenture trustee, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION |
| BAMA OAKS RETIREMENT, LLC, SAINT | ) NO.: 21-00028-KD-B |
| SIMONS HEALTH CARE, LLC, and THE | ) |
| MEDICAL CLINIC BOARD OF THE CITY | ) |
| OF MOBILE (SECOND), | ) |
| | ) |
| Defendants. | ) |

_____

## <u>ORDER APPOINTING RECEIVER</u>

This action is before the Court on the Emergency Motion for the Entry of an Order: (I) Appointing a Receiver, (II) Granting Certain Injunctive Relief, and (III) Approving Receiver Financing (the "***Receiver Motion***") filed by BOKF, N.A., as indenture trustee (the "***Trustee***") (Doc. 3). A hearing on the Receiver Motion was scheduled for February 10, 2021. The parties having consented to relief prior to that hearing and entered into the Stipulation of Facts (the ***"Stipulation"***) (Doc. 34), the Court hereby makes the following findings of fact and conclusions of law in accordance with the agreement and Stipulation of the parties:

### FINDINGS OF FACT & CONCLUSIONS OF LAW

1.      The Trustee is a national banking association with its principal place of business being in the State of Oklahoma and its principal office address being One Williams Center, 10th Floor, Tulsa, Oklahoma 74172. For the purposes of diversity jurisdiction, the Trustee is a citizen of Oklahoma. The Trustee brings this action solely in its capacity as indenture trustee under the Bond Documents (as defined below) for the benefit of the holders of the Bonds (as defined below) (the "Bondholders").

2.      Defendant Bama Oaks Retirement, LLC (the "***Lessee")*** is a Georgia limited liability company and is not a citizen of Oklahoma for purposes of diversity jurisdiction. The Lessee's members are Christopher F. Brogdon ("***Brogdon***"), an individual who is a citizen of Georgia, and Mark Berkowitz, an individual who is not a citizen of Oklahoma.

3.      The Lessee leases a 118-unit assisted living facility located in Mobile, Alabama (the "***Facility***").

4.      Defendant the Medical Clinic Board of the City of Mobile (Second) (the "***Issuer***") is a public body corporate and politic created and existing under the laws of the State of Alabama, with its principal place of business in Alabama. Accordingly, the Issuer is a citizen of Alabama for the purposes of diversity jurisdiction.

5.      The ***Issuer*** issued its Bama Oaks Retirement, LLC Project, Series 2012A and 2012B Bonds, in the aggregate principle amount of $11,700,000 (the "***Bonds***") for the purpose of, *inter alia*, providing funds to purchase the Facility.

6.      The Facility is located in Mobile County, Alabama.

7.      The Issuer issued and sold the Bonds pursuant to that certain Trust Indenture (the "***Indenture***"), dated as of September 1, 2012, between the Issuer and the Trustee.

8.      The proceeds of the Bonds were used by the Issuer to purchase the Facility, which was subsequently leased to the Lessee pursuant to the terms of a Lease Agreement (the "***Lease Agreement***") dated September 1, 2012, between the Lessee and the Issuer.

9.      The Lessee's obligations under the Lease Agreement and the Bonds were secured by a Mortgage and Security Agreement (the "***Mortgage***"), by which the Issuer, and its successors and assigns, granted a first-priority security interest in, among other things, the following collateral

(the "*Collateral*") to the Trustee:

    (a)    the land on which the Facility was constructed;

    (b)    the Facility itself, as well as other improvements on the land;

    (c)    all furnishings, furniture, fixtures, machinery, appliances, vehicles, and personal property in any way connected with the use and enjoyment of the Facility; and

    (d)    all existing and future accounts, revenues, contract rights, all existing and future instruments, chattel paper and general intangibles of the Lessee and all proceeds therefrom, directly related to or arising from the Facility and/or its operation.

The Mortgage is properly recorded in the records of Mobile County, Alabama, beginning in Deed Book 6940, Page 649. A description of the land is attached as **Exhibit "A"**.

10.    The Trustee has a perfected, first-priority lien on the Collateral pursuant to the Mortgage.

11.    The Trustee owns and holds the Mortgage for the benefit of the Holders of the Bonds. The Bonds, the Indenture, the Mortgage, the Lease Agreement, and any and all other documents executed and delivered in the bond transaction are together referred to as the "***Bond Documents***."

12.    The Issuer assigned all its rights, title, and interests under the Lease Agreement, and any and all revenues pledged to satisfy repayment of the Bonds, to the Trustee under the Granting Clauses of the Indenture.

**A.    Borrower's Defaults under the Bond Documents**

i.    Events of Default have occurred and are continuing under the Lease Agreement and the Mortgage.

ii.      Events of Default exist under the Bond Documents arising from the failure to pay, when due and payable, required payments under the Lease Agreement. Pursuant to Section 6.1(a) of the Lease Agreement, the Lessee's failure to make payment when due is an Event of Default under the Lease Agreement. Additionally, pursuant to Section 901(d) of the Indenture, the occurrence of an Event of Default under the Lease Agreement also constitutes an Event of Default under the Indenture.

iii.     An event of default has occurred under Section 2.01 of the Mortgage as the Lessee has defaulted in its payment obligations and the Issuer has not paid the Lessee's obligation. Additionally, pursuant to Section 901(d) of the Indenture, the occurrence of an Event of Default under the Mortgage also constitutes an Event of Default under the Indenture.

iv.      In June 2017, the Trustee notified the Lessee and the Holders of the Bonds of the Lessee's failure to make payment when due, and the Lessee has failed to cure that default and has not made a further payment since May 3, 2017.

v.       On August 31, 2015, and October 13, 2015, the Trustee posted a notice advising the Lessee and the Holders of the Bonds of the Lessee's failure to comply with its financial covenant obligations. The Lessee has failed to cure its financial covenant defaults.

vi.      The Lessee filed a Chapter 11 bankruptcy petition on February 1, 2020, in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division (Case No. 20-61914-bem) (the "***Bankruptcy Case***"). The Bankruptcy Case remains pending.

vii.     On December 17, 2020, the Trustee was awarded relief from the automatic stay in the Bankruptcy Case to file the present action.

viii.    On January 11, 2021, following failure of the Lessee to cure the defaults and Events of Default, and following the grant of relief from the automatic stay of section 362 of the United

States Bankruptcy Code by the United States Bankruptcy Court for the Northern District of Georgia[1] in the Bankruptcy Case, the Trustee sent the Lessee and the Issuer a Notice of Acceleration and Demand for Payment under the Bond Documents, accelerating all payments owed by the Lessee under the Bond Documents.

ix.      As of the filing of the Complaint in this case, the Lessee has failed to pay the amounts due under the Bond Documents and remains in default.

x.      As of January 6, 2021, the following amounts were owed by Lessee under the Bond Documents:

| | |
|---|---|
| Principal: | $ 11,155,977.57 |
| Interest: | $ 3,070,89.51 |
| Trustee's Fees and Expenses: | $ 167,011.48 |
| | |
| Total Outstanding: | $14,393,078.56 |

Interest on the principal amounts has accrued, and continues to accrue, after January 6, 2021, at the default rate of interest. Additionally, attorneys' fees and costs and other fees, costs, and expenses incurred by the Trustee are due and payable under the Bonds Documents, which, as of January 6, 2021 totaled $167,011.48, said amount also being secured by the Bond Documents and Collateral. Attorneys' fees and costs and other fees, costs, and expenses incurred by the Trustee continue to accrue.

**B.      Appointment of Receiver**

xi.      The Trustee has requested appointment of a receiver. Lessee and Saint Simons Health Care, LLC do not oppose the request.

---

[1] Order Granting Relief from Stay, *In re Bama Oaks Retirement, LLC*, No. 20-61914-bem, Doc. 122 (Bankr. N.D. Ga. Dec. 17, 2020).

xii.      Under the express terms of the Bond Documents, Article IX, Section 905 of the

Indenture, Section 2.05 of the Mortgage, and Section 6.2 of the Lease Agreement provide that, upon

an event of default, the Trustee is entitled as a matter of right to the appointment of a receiver to

take control of the Collateral, including the right to receive the rents, issues, and profits flowing

from the Facility.

xiii.      Specifically, Section 905 of the Indenture provides:

> Upon the occurrence of an Event of Default and upon the filing of a suit or
> other commencement of judicial proceedings to enforce the rights and
> remedies of the Trustee and of the Bondholders hereunder, the Trustee shall
> be entitled, as a matter of right to the appointment of a receiver or receivers
> of the Trust Estate, pending such proceedings, with such powers as the court
> making such appointment shall confer.

xiv.      Similarly, Section 2.05 of the Mortgages provides:

> If an Event of Default shall have occurred and be continuing, Trustee upon
> application to a court of competent jurisdiction, shall be entitled as a matter
> of strict right without notice and without regard to the occupancy or value of
> any security for the indebtedness secured hereby or the solvency of any party
> bound for its payment, to the appointment of a receiver to take possession of
> and to operate the Facility and to collect and apply the rents, issues, profits
> and revenues thereof. The receiver shall have all of the rights and powers
> permitted under the laws of the state wherein the Land is situated.

xv.      Section 6.2(b) of the Lease Agreement provides:

> The Trustee may take whatever action at law or in equity may appear
> necessary or desirable to collect any sums then due and thereafter to become
> due hereunder or to enforce performance and the observance of any
> agreement of the Lessee hereunder.

xvi.      The Bond Documents are legal, enforceable, and binding contracts and Lessee is in

default of its contractual and legal obligations owing under the Bond Documents.

xvii.      The Trustee is under-secured. The Facility is appraised at between $6.9 million and

$8.7 million, while the total indebtedness is in excess of $14.3 million.

xviii.          Derek Pierce of Healthcare Management Partners, LLC ("**HMP**") (the "**Receiver**")

is qualified to serve as receiver in this matter and has the requisite experience and qualifications to

serve as receiver of the Facility and other Collateral pursuant to the terms of this Order.

## ORDER

Based upon the foregoing findings and conclusions, the Receiver Motion and the Motion

for Entry of Order Appointing Receiver (Docs. 3, 35) are GRANTED. Accordingly, it is

ORDERED that:

1.          Derek Pierce of Healthcare Management Partners, LLC is appointed as the

Receiver over the Receivership Estate (as defined below).

2.          The Receiver shall serve as an officer of this Court and his duty upon his

appointment is to take possession of the assets of Lessee for this Court and to preserve those

assets so that upon distribution of the assets to the creditors they will be fully available to pay the

claims of the creditors.

3.          Within five days of the date of this Order, the Receiver shall obtain and file with

the Clerk of the Court a surety bond in the amount of $50,000.00 to be provided by a corporate

surety, guaranteeing performance by him of the duties and obligations of his office of

receivership, the bond to be payable to this Court for loss due to the acts of all agents, servants, or

employees of the Receiver, and provide this Court with his written acceptance to faithfully

perform the Receiver's duties as set forth in this Order.

### The Receivership Estate

4.          Upon entry of this Order and the Receiver's acceptance of his appointment

as receiver of the Receivership Estate (as defined below) and posting of the required bond,

the Receiver is directed and empowered to take from Lessee all rights and powers of Lessee

with respect to the Facility, and its administration and operation, including:

i.   the Collateral;

ii.  any and all real or personal property used in or related to the maintenance and operation of the Facility, including but not limited to all equipment, fixtures, machinery, motor vehicles, automobiles, trucks, other rolling stock, leasehold improvements, construction work in progress, supplies, raw materials, inventory, goods, work in process, parts, computers, computer software (including all licenses, leases, documentation, and source codes with respect to the computer software), telecommunication systems, fixtures, furniture, furnishings, office equipment, all tangible property furnished by or used in connection with the Facility, as well as all rights, easements, and franchises appurtenant thereto (collectively, the "Physical Assets");

iii. any and all cash, cash equivalents, bank accounts, deposit accounts, credits, prepaid expenses, deposits, deferred charges, advance payments, security deposits, prepaid items, funds, securities, investment accounts, accounts receivable, notes, notes receivable, mortgages, security interests, income, revenues derived from the Facility, insurance claims, insurance proceeds, any and all civil claims, whether actual, contingent, or otherwise, and any and all other rights to receive payments and/or property used in, generated from, or related to the administration, maintenance, and operation of the Facility as well as all rights, interests, licenses, provider numbers, and franchises related thereto (collectively, the "***Cash Equivalent Assets***");

iv.  any and all records, documents, accounting records, contracts, and operating data and/or electronically stored information (including any and all computer operating systems in which such information is or may be stored) relating to the operation and management of the Facility and the Collateral that is in the possession, custody, or control of Lessee (collectively, the "***Books and Records***");

v.   any and all contracts, licenses, licensed nursing home beds/units, assisted living beds/units, provider agreements and permits affecting, or related to, the Facility or its operation (collectively, the "***Contracts and Licenses***"); and

vi.  any and all of the internet domain names, post office box numbers, telephone and facsimile numbers, and any and all other listings and numbers used by Bama Oaks Retirement, LLC in connection with the operation and management of the Facility (collectively, the "***Contact Information Assets***"; and together with the Collateral, Physical Assets, Cash Equivalent Assets, Books and Records, and Contracts and Licenses, the "***Receivership Estate***").

5.   Saint Simons Health Care, LLC, Lessee, and their successors, assigns, agents, officers, directors, stockholders, members, managers, employees, attorneys, accountants, anyone acting for or in concert with Lessee, and any persons or entities, including banks, financial or depository institutions, receiving notice of this Order and having possession or control of the

Collateral, Books and Records, Cash Equivalent Assets, Contracts, Licenses, Contact Information Assets, the Facility, and/or any and all Physical Assets are hereby ordered to immediately deliver over to the Receiver: (1) full access to all Books and Records; (2) full and exclusive control over any and all Cash Equivalent Assets (including any information required by a bank or financial or depository institution to enable the Receiver to take exclusive control over any and all Cash Equivalent Assets), Contracts and Licenses, and Contact Information Assets; and (3) full access to and exclusive control over any and all Physical Assets. For the avoidance of doubt, and notwithstanding anything to the contrary in this Order, the Trustee shall continue to administer and control all funds and accounts established under Article V of the Indenture pursuant to the terms of the Bond Documents.

### The Receiver's Authority and Power

6.      Upon the acceptance by the Receiver of his appointment pursuant to this Order, the Receiver is granted the full power and authority to control, manage, administer, operate, and protect the Receivership Estate, and is hereby specifically vested with all statutory and common law powers, rights, and privileges of a receiver necessary to accomplish the purpose of this receivership.

7.      The Receiver is to operate and administer the Receivership Estate in an economical and efficient manner in compliance with the terms and conditions of the Bond Documents and applicable law. The Receiver is hereby authorized and directed to recover, collect, operate, maintain, preserve, and manage the Receivership Estate in the best interests of the Receivership Estate's creditors, and to take all action deemed reasonable and necessary to ensure compliance with all applicable requirements imposed by local, state, or federal law, and regulations promulgated by the State of Alabama, including, but not limited to, those requirements relating to the health, welfare, and privacy rights of the residents of the Facility.

8.      To that end, by this Order, the Court intends to give, and does hereby give, the Receiver the full power and authority to fulfill its obligations as Receiver of the Receivership Estate, including, but not limited to, the sole and exclusive right and authority to:

i.      take complete and exclusive possession, control, and custody of and to exclusively run, operate, administer, manage, and perform all acts necessary to operate the Receivership Estate in the ordinary course of business, in accordance with the provisions of the Bond Documents and applicable state and federal law, including but not limited to entering into, modifying, and administering contracts and agreements for the provision of accommodations and related services to current and prospective residents of the Facility;

ii.     take possession of all inventory, equipment, and improvements constituting the Facility, and all books, records, and personal property relating to the Facility, wherever located;

iii.    take possession of all bank accounts containing funds associated with the Facility, wherever located, and to open, transfer, and change all bank and trade accounts relating to the Facility and the Collateral, including accounts to which third-party payors make payment, so that all such accounts are in the name of the Receiver;

iv.     conduct an inventory of all personal property included in the Facility;

v.      exercise all rights as to ownership of the Facility subject to the limitations set forth herein;

vi.     implement operational efficiencies and revenue enhancement programs;

vii.    fix, charge, revise, raise, and maintain rates and charges for services furnished by the Receivership Estate;

viii.   collect revenues derived from the Receivership Estate and apply those revenues to the expenses of operating and maintaining the Receivership Estate in such order and amount as the Receiver, in its business judgment, deems prudent and appropriate, with available resources then applied in such order as required under the Bond Documents;

ix.     make any reasonable reductions or revisions in the Receivership Estate's operating expenses, whether or not in the ordinary course of business;

x.      manage, operate, maintain, and otherwise control all of the Collateral as necessary to prevent diminution of the Collateral's value including, but not limited to: (a) the receipt, collection, possession, and preservation of all accounts, incomes, profits, rents, and revenues; (b) subject to available resources in the Receivership Estate, from the date of this Order, the payment of taxes, insurance, utility charges, and other expenses and costs incurred in managing and preserving the Facility and the Collateral, including any past due amounts necessary to restore services, coverage or good standing; (c) filing cost reports or other claims for payment, reimbursement, or otherwise; (d) making use of the Facility's Medicaid provider number, Medicare

provider number, and any other such provider number, license or certification necessary for the  continued operation of the Facility and collection of receivables in the ordinary course; and (e) exercising any intangible rights;

xi.     receive, collect, take possession of, and preserve all accounts, incomes, profits, and other revenues generated from and by the Receivership Estate, subject to the requirements of the Bond Documents;

xii.    terminate or modify any currently existing written or oral contract (other than the Bond Documents), with any and all damages arising therefrom to be paid with revenues derived from the Receivership Estate in such amounts and at such times as the Receiver deems prudent in his business judgment;

xiii.   assume and assign any currently existing written or oral contracts in accordance with the terms of this Order;

xiv.    enter into new contracts on behalf of the Receivership Estate for goods or services that the Receiver, in its business judgment, deems necessary or advisable for the operation of the Receivership Estate;

xv.     file, investigate, institute, prosecute, defend, compromise, adjust, or intervene in any action or proceeding, legal, equitable, or otherwise, before this Court or any other court, agency, or tribunal, as the Receiver may deem, in its sole business judgment, to be necessary and proper for the protection, maintenance, enhancement, and/or preservation of the Receivership Estate, or to further the provisions of this Order;

xvi.    investigate and determine the nature and extent of any and all prior expenditures that may have been improperly classified and take all reasonable and necessary action to have such expenses properly classified;

xvii.   investigate and determine whether all revenues have been properly accounted for and to take all reasonable and necessary action to recover any and all revenues that have been diverted away from the Receivership Estate or otherwise improperly applied and/or handled;

xviii.  institute, prosecute, defend, and settle such legal proceedings as the Receiver deems necessary relating to the recovery, collection, maintenance, protection, or proper care of the Receivership Estate, and to employ counsel therefore;

xix.    hire, discharge, manage, and control such employees and/or staff at the Facility, except as prohibited by law, as the Receiver determines necessary or advisable;

xx.     permit the Trustee and its respective agents and independent contractors and/or professionals to inspect fully the Facility, its accounts, and all books and records, including records as to the maintenance of any portion of the Facility, upon reasonable notice to the Receiver;

xxi.    take all such actions and expend all such sums as may be necessary and prudent in the Receiver's business judgment to obtain, maintain in effect, restore, or transfer all Licenses, insurance, zoning approvals, provider numbers, and other approvals in an effort to ensure that the Receivership Estate may continue to be used for its intended purpose;

xxii.      enter into and/or terminate, modify, and renew contracts for any insurance with the same or different insurance providers that the Receiver believes, in its sole business judgment, is necessary or advisable for the continued operation of the Receivership Estate in the ordinary course of business as a going concern;

xxiii.     terminate or modify, as the Receiver deems prudent in the exercise of its business judgment, any business activities of, or services provided at or in connection with, the Receivership Estate;

xxiv.      engage professionals in the ordinary course of the Facility's business, including, but not limited to, attorneys, accountants, communication consultants, investment bankers, consultants, brokers, forensic and investigative accountants, engineers, managers and any other service or health care providers (each a "***Professional***" or "***Service Provider***" as applicable) as the Receiver may, subject to the approval of the Trustee, deem necessary or advisable to assist the Receiver in the performance of its duties under this Order and agree to such terms (including financial terms) with respect to such engagements as the Receiver may deem necessary or advisable, without further order of this Court and with the reasonable fees and expenses of such Professionals and Service Providers to be payable on a current basis from the Receivership Estate as operating expenses, subject to the provisions of Paragraph xxx below;

xxv.       comply with all requirements of all governmental authorities;

xxvi.      change any and all locks on the Receivership Estate;

xxvii.     generally, do, execute, and perform any other act, deed, matter, or thing whatsoever that the Receiver reasonably believes ought to be done, executed, and performed in and about, or with respect to, the Receivership Estate;

xxviii.    take all actions necessary and appropriate to preserve, maintain, renew, and protect all contracts and licenses affecting, or related to, the Facility or its operation to the extent the Receiver in its sole discretion determines that the said contracts and licenses should be preserved, maintained, renewed, and protected, including making all necessary filings with the regulatory bodies and agencies with jurisdiction over the Facility;

xxix.      execute such documents as are necessary to transfer all contracts and licenses affecting, or related to, the Facility or its operation to any purchaser of the Facility, including a purchaser at a non-judicial foreclosure sale which may be conducted by the Trustee;

xxx.       pay itself and any Professionals and/or Service Providers such fees (and reimburse such expenses) as are payable in accordance with the terms of this Order after the filing of a fee application;

xxxi.      request and receive advances from the Trustee on terms mutually agreeable to the Trustee and the Receiver for expenses incurred by the Receiver relating to the care, preservation, and maintenance of the Receivership Estate. All advances made by the Trustee to the Receiver shall be deemed advances under and pursuant to the Bond Documents to protect and preserve the Trustee's interest in the Collateral, shall be secured by all of the Collateral, and shall have the same priority as the

advance originally made pursuant to the terms of the Bond Documents. Alternatively, the Receiver may obtain advances from a third party lender for expenses incurred by the Receiver relating to the care, preservation, and maintenance of the Receivership Estate; provided, however, that any third party advance (and all rights of the third party lender) shall be subordinate in all respects to the Trustee's right to payment under the Bond Documents and the Trustee's interest in the Collateral, unless the Trustee agrees in writing to alternative treatment; and

xxxii.  generally do, execute, and perform any other act, deed, matter, or thing whatsoever that the Receiver reasonably believes ought to be done, executed, and performed in and about, or with respect to, the Receivership Estate; provided, however, that notwithstanding the Receiver's power and authority to undertake any of the foregoing, the Receiver shall have no obligation to do so if the Receiver believes, in its sole business judgment, such action would not be in the best interest of the Receivership Estate or if the Receiver lacks the resources in the Receivership Estate to fund such action after payment of other expenses of the Receivership deemed by the Receiver to be more critical.

9.      The Receiver shall have the power, in accordance with applicable law, to avoid fraudulent transfers or conveyances of any of the Facility's assets or fraudulent obligations incurred by Lessee prior to the appointment of the Receiver.

10.     The Receiver shall be bound by all applicable laws.

11.     Subject to the entry of an order of the Court and with the consent of the Trustee, the Receiver shall have the power to market all or any part of the Receivership Estate for sale.

**The Receiver Shall Have Exclusive Control Over the Receivership Estate Without Interference**

12.     The Receiver shall have full and sole control over all of the Receivership Estate, including, all authorizations or other documentation necessary or desirable for the Receiver to administer, maintain, and operate the Receivership Estate in accordance with applicable law.

13.     Lessee is hereby enjoined from administering, operating, directing, controlling or managing the business and affairs of the Receivership Estate, which authority has been vested solely and exclusively in the Receiver under this Order.

14.     Unless otherwise approved or directed by the Receiver, all persons, firms, corporations, and associations in any way related to, linked to, or associated with Saint Simons Health Care, LLC and Lessee, along with their officers, directors, stockholders, members, managers, subscribers, agents, and all other persons in active concert or participation with them, are prohibited and enjoined from: (i) the transaction of further business with the Receivership Estate; (ii) the waste, transfer, or disposition of property of the Receivership Estate; (iii) doing any action or thing whatsoever to interfere with the taking control, possession, and administration by the Receiver of the Receivership Estate; (iv) interfering in any way with the exclusive jurisdiction of this Court over the Receivership Estate; (v) the institution or further prosecution of any action or proceedings against the Receiver, the Receivership Estate, or its assets, except before the Court; (vi) withholding from the Receiver books, accounts, documents, records, or any other part of the Receivership Estate relating to the business of the Receivership Estate; and (vii) any other threatened or contemplated action that might lessen the value of the Receivership Estate, impede the Receiver's discharge of its duties, prejudice the rights of the Trustee or other creditors, or interfere with any proceeding initiated by the Receiver.

15.     Saint Simons Health Care, LLC and Lessee, along with their agents, employees, officials, officers and successors and assigns, shall fully cooperate with the Receiver in all matters related to this Order and the operation and administration of the Receivership Estate, including but not limited to executing all documents, providing all authorizations, and taking any other action that the Receiver believes is necessary or desirable to facilitate the operation of the Receivership Estate or to exercise its powers as Receiver.

16.     The Receiver's full and sole control of the Receivership Estate shall not in any way diminish the duties and cooperation required by Saint Simons Health Care, LLC and Lessee under

this Order.

17.     Upon notice of this Order, any person or entity, bank, financial or depository institution, or any employee or agent of such person or entity, shall be deemed to be required to comply with all terms of this Order until this Court shall have relieved such person from the terms of this Order by subsequent order.

18.     All civil legal proceedings of any nature related to any Receivership Property are stayed in their entirety and all courts having any jurisdiction thereof are enjoined from taking or permitting any action in connection with such proceeding until further Order of this Court; provided however that the United States Bankruptcy Court for the Northern District of Georgia shall retain jurisdiction in the Bankruptcy Case.

### The Receiver's Rights and Obligations

19.     The Receiver and any other Professional or Service Provider engaged by the Receiver (collectively, the "***Receiver Affiliates***") shall owe duties only to the Receivership Estate and the Court, but not to the Trustee, Lessee, Saint Simons Health Care, LLC, or any other third party. The Receiver's retention of the law firm of Waller Lansden Dortch & Davis, LLP ("***Waller***") to assist and represent the Receiver is hereby approved. The Receiver is, without further approval of the Court, authorized to permit Saint Simons Health Care, LLC, the current management company, to continue to manage the Facility under the direction and supervision of the Receiver should it determine that it is in the best interests of the Receivership Estate.

20.     Within forty-five (45) days after the date of entry of this Order and at least thirty (30) days prior to the expiration of the period covered by any budget acceptable to the Trustee pursuant to this paragraph, the Receiver shall deliver to the Trustee a proposed budget of anticipated income and expenses of the receivership for a period of not less than six (6) months. The Trustee

shall have ten (10) business days after receipt of any proposed budget to either give the Receiver its written acceptance of the same or deliver its written disapproval, with specific objections noted in said disapproval. In the event that any budget is so disapproved by the Trustee, the Receiver will continue to work with the Trustee until an acceptable budget (the "***Budget***") is completed. If the Receiver and the Trustee do not agree to the Budget within sixty (60) days after the date of entry of this Order, the most recent Operating Budget approved by the Trustee, as that term is described in the Indenture and in Section 5.4 of the Lease Agreement, shall be the Budget until the Receiver and the Trustee agree otherwise. If the Receiver and the Trustee do not agree to the Budget for any subsequent six-month period after the initial six-month period, prior to the beginning of such period, the Budget for the preceding six months shall continue in effect until a Budget is accepted or approved by the Trustee for the remainder of the applicable six-month period. Once the Budget is accepted by the Trustee, the Receiver shall deliver a copy of the Budget to Lessee. The Receiver and the Trustee may negotiate any amendments to the Budget which, as accepted by the Trustee, shall be collectively the Budget, however the Receiver need not seek approval for expenses in excess of amounts in the Budget which will result in a 15% or less variance from a budgeted item. Notwithstanding the Trustee's involvement in the creation or approval of the Budget, in no event is the Trustee obligated or required to fund proceeds for the operation and/or maintenance of the Facility. The development of the Budget shall solely be a matter for the Receiver and the Trustee, and the approval of the Budget shall be at the sole discretion of the Receiver and Trustee.

21.     Within forty-five (45) days from the date of entry of this Order, and continuing each month thereafter, the Receiver shall also provide to the Trustee a report (the "***Monthly Report***") comparing the Receiver's actual revenue and expenditures against the budgeted revenue and expenditures, as detailed in the Budget. If so requested by the Trustee, the Receiver shall also deliver

to the Trustee copies of all supporting bills and expenses for any and all expenses reflected on any given Monthly Report and shall also provide to the Trustee any other additional or relevant information obtained from time to time by the Receiver in connection with the Receivership Estate.

22.     The Receiver shall have the right to pay the costs necessary to perform and complete any improvements, additions, changes, remediations, additions, or other capital expenditures of the Receivership Estate (the "***Capex Expenses***"), but only pursuant to a budget for such items approved by the Trustee in writing in advance (as the same may be amended from time to time in writing with the consent of the Trustee, the "***Capex Budget***").

23.     The Receiver shall make an accounting and keep accurate records concerning the Receivership Estate, including the actual revenues collected, any protective advances made by the Trustee to the Receivership Estate, and expenses paid each month, and make such records available to the Trustee, Lessee, and the Court during normal business hours and upon reasonable notice.

24.     Within fourteen (14) days of entry of this Receivership Order, the Receiver shall request transfer of any state issued operating license(s) for the Facility from Lessee (or whatever entity holds the operating license(s) for the Facility) to Healthcare Management Partners, LLC, as Receiver (or its designee) and provide proof of such request to counsel for Lessee. The parties acknowledge that discretion to transfer the operating license(s) for the Facility lies solely with the State of Alabama and that Receiver cannot ensure that the State of Alabama will approve the transfer of the license as requested by the Receiver. The parties agree that the State of Alabama's refusal to transfer the license as requested by the Receiver shall not be grounds for setting aside this Receivership Order. The parties acknowledge that following entry of this Order, neither Saint Simons Healthcare, LLC nor any of its members, officers or employees have any obligation or responsibility to loan any funds to any entity in connection with the operations of the Facility.

25.     The Receiver shall permit the Trustee and its respective agents and independent contractors to inspect the Receivership Estate and the Receiver's records with respect to the Receivership Estate during normal business hours and upon reasonable notice. The Receiver shall provide to Lessee and Saint Simons Healthcare, LLC, and their attorneys and agents, records of the Facility, and access to the employees of the Facility, upon reasonable notice, if requested because of any legal action, including but not limited to the Blanton Suit (as defined below), that has been brought or is threatened to be brought against Lessee or Saint Simons Healthcare, LLC or any of their current or former officers or employees. The provisions of this paragraph shall not diminish other requirements of this Receivership Order, including any injunctive relief provided for herein.

26.     The Receiver shall review whether the Receivership Estate is in compliance with the requirements established with respect to the tax-exempt status of the Bonds, as set forth in the Bond Documents and any related tax documentation executed in connection therewith that is made available to the Receiver, and, to the extent feasible, shall make reasonable efforts to regain or maintain compliance with such requirements.

27.     The Receiver shall have the absolute right, but not the duty, to change any accounts or other investment funds in which the Cash Equivalent Assets are currently maintained to any other account or fund if such change is in compliance with the terms of the Bond Documents and this Order.

28.     The Receiver and the Receiver Affiliates shall comply with all laws regarding the operation of the Facility, and shall not have personal liability for any liabilities of the Receivership Estate or obligations incurred pursuant to the terms of this Order or any other order of this Court and, in the event any such liability or obligation is at any time asserted against the Receiver Affiliates, the Receiver may use revenues derived from the Receivership Estate to contest any such

claimed liability and to pay, compromise, settle, or discharge such claimed liability on terms reasonably satisfactory to the Receiver, and such expenses shall constitute operating expenses of the Receivership Estate.

29.     The Receiver and the Receiver Affiliates shall perform the duties and obligations imposed on them by this Order with reasonable diligence and care under the circumstances and neither the Receiver nor any of the Receiver Affiliates shall be personally liable to the Trustee, Lessee, the Defendants, or any third party except for such of their own acts as shall constitute fraudulent or willful misconduct as determined by a Final Order. For purposes of this Order, "Final Order" shall mean an order or judgment of this Court as to which: (a) the time to appeal, petition for certiorari, or file a motion for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or motion for re-argument or rehearing shall then be pending; or (b) in the event that an appeal, writ for certiorari, re-argument, or rehearing has been sought, the time to take any further appeal, petition for certiorari, or request for re-argument or rehearing shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order, as long as such a motion has not actually been filed.

30.     The Receiver and the Receiver Affiliates shall be defended, held harmless, and indemnified from time to time by the Receivership Estate against any and all losses, claims, costs, expenses and liabilities (including legal fees, costs, and expenses), and any costs of defending any action, suit, proceeding, or investigation to which the Receiver or the Receiver Affiliates may be subject, by reason of their execution in good faith of their duties under this Order or any other order of this Court; provided, however, such indemnity shall be payable solely from the Receivership Estate.

31.     At a reasonable expense to the Receivership Estate, the Receiver may obtain insurance against claims for liability, damages awards, and settlements for the benefit of the Receiver, the Receiver Affiliates, and the Receivership Estate. The parties acknowledge that upon entry of this Order, the Receivership Estate shall bear full and sole responsibility for placing and maintaining full insurance coverage on the Facility and that Saint Simons Healthcare, LLC shall terminate all insurance coverage it currently has placed on the Facility not sooner than thirty (30) days from entry of this Receivership Order. Any insurance premium refunds shall be an asset of the Receivership Estate.

32.     Any actions or proceedings which involve the Receiver, any Receiver Affiliate, or the Receivership Estate or relating in any way to the Receivership Estate or the administration, operation or control of the Receivership Estate by the Receiver shall be filed in this Court, and no judgment of any party other than the Trustee shall be enforced against the Receivership Estate absent further order of this Court.

33.     As an appointee of this Court, the Receiver and the Receiver Affiliates shall enjoy judicial immunity.

34.     The Receivership Estate shall be subject to and liable for only such local, state, and federal taxes that accrue during the pendency of the Receivership and for which the Receivership Estate would have become liable when operated by Lessee.

35.     Notwithstanding anything in this Order to the contrary, nothing contained in this Order shall be deemed to be either an assumption of liability by the Receiver or the Trustee, or a requirement that the Receiver or the Trustee fund the costs of this receivership or the operating expenses of the Facility, which costs and expenses shall be paid exclusively from the revenues derived from the Facility and the Collateral and the assets comprising the Facility and the Collateral,

which revenues and assets, including accounts and deposit accounts of Lessee or proceeds from the sale of the Collateral, are vested in the Receiver pursuant to this Order.

**Payment of Fees and Costs**

36.     The Receiver shall file applications for payment of the Receiver's and the Receiver Affiliates' fees and expenses on the twentieth (20th) day of each calendar month setting forth reasonably itemized time entries and expenses. Unless a party files a written objection to the application for payment within thirty (30) calendar days of the filing of the application for payment, the application shall be deemed approved and the Receiver is authorized to pay the fees and expenses of the Receiver and the Receiver Affiliates as necessary expenses of operation of the Facility without further order of the Court; provided that the Receiver's fee shall not exceed the limits in paragraphs 37, 38, and 39.

37.     Commencing on the date of entry of the Receivership Order, for its services as Receiver, the Receiver shall receive from the Receivership Estate the greater of Seven Thousand ($7,000) per month (the "***Minimum Monthly Fee***") or five (5%) percent of Net Revenues (as defined herein) (the "***Base Management Fee,***" and collectively with the Minimum Monthly Fee, the "***Management Fee***"). The Management Fee for the month of entry of the Receivership Order will be prorated based on the number of calendar days. "***Net Revenues***" shall mean, for each accounting period, all revenues and receipts of every kind derived from operating the Facility and all departments and parts thereof, including, but not limited to: actual collections (net of discounts and contractual allowances) for goods and services provided to residents of the Facility (whether paid by such residents or their sponsors or reimbursed by Medicare, Medicaid or any other third-party payor, and including any "over-the-counter" payments of deductibles, copayments and similar amounts), less any refunds or recoupments that relate to goods and services provided on or after the

date of entry of the Receivership Order; income from food, beverage and catering sales; income from telephone charges; income from vending machines; and proceeds, if any, from business interruption or other loss of income insurance (to the extent such insurance either reimburses on the basis of gross revenues or otherwise covers all expenses including Receiver's fees), all determined in accordance with United States generally accepted accounting principles ("**GAAP**"); provided, however, that the following items shall be disregarded in the calculation of Net Revenues: (a) gratuities to employees at the Facility; (b) federal, state or municipal excise, goods and services, sales or use taxes or similar taxes imposed at the point of sale and collected directly from residents or guests of the Facility or included as part of the sales price of any goods or services; (c) proceeds from the sale of furniture, fixtures and equipment and any other capital asset; (d) interest received or accrued with respect to the balances in any operating or reserve accounts of the Facility; (e) proceeds from any sale of the Facility, or any other capital transaction; (f) proceeds of any financing transaction affecting the Facility; (g) resident fee deposits until such time as such deposits are applied to current fees and other charges due and payable; (h) awards of damages, settlement proceeds and other payments received by the Facility in respect of any litigation other than litigation to collect fees due for items and/or services provided by or on behalf of the Facility; (i) proceeds of any condemnation; (j) proceeds of any casualty or other insurance, other than proceeds of any loss of income or business interruption insurance (which proceeds shall be included as part of Net Revenues); and (k) payments under any policy of title insurance.

38.     In addition to the Management Fee, the Receivership Estate shall:

a.   reimburse Receiver's reasonable out-of-pocket expenses (the "**Out-of-Pocket Expenses**") incurred in connection with providing services set forth in the Receivership Order and with performing Receiver's obligations set forth in the

22

Receivership Order, including reasonable travel (including without limitation mileage reimbursement, vehicle rental, and airline travel), lodging and meal expenses, overnight delivery costs, itemized long distance calls, and all fees and reasonable expenses incurred by each third party retained to provide services for the benefit of the Facility; and

b.   pay the Receiver a fixed one-time $7,500 onboarding and implementation fee to cover costs of transitioning control and administration of the facility to the Receiver.

39.   For each month, Receiver shall pay itself on a current basis from the Facility's operating account (the "***Operating Account***") on or before the twentieth (20th) day of the following month without the need for any fee application or other filing with or order of the Court. The Receiver shall provide in each Monthly Operating Report a reconciliation of its Management Fee, Out-of-Pocket Expenses, and Net Revenues. In the event there are insufficient funds to pay the Receiver's fees as contemplated herein, the Receiver shall have a first lien encumbering the Receivership Estate having a super-priority senior to the Indenture Trustee. In the event revenues, operating capital and other funds are not sufficient to pay for the costs of operating the Facility or making capital improvements and repairs thereto, Receiver shall have no obligation or duty to supply the needed capital. For avoidance of doubt, the Receiver's fees shall be separate and apart from the fees and expenses of the Receiver's Affiliates which shall be paid in accordance with the terms of the Receivership Order and are in addition to the fees payable to the Receiver.

40.   Fees and expenses payable to the Receiver and the Receiver Affiliates under this Order shall be treated as priority administrative claims against the Receivership Estate, and payment of such amounts in accordance with this order shall take priority over payment of any claims arising

prior to the date on which the Receiver is appointed (including, but not limited to, claims of the Trustee with respect to the Bonds).

### Administrative Matters

41.     The Receiver may only be removed by order of this Court upon appropriate motion, notice, and hearing, after a showing of good cause by the Trustee or Lessee.

42.     Within 14 days of the Receiver's acceptance of appointment, Lessee shall provide the Receiver with a sworn statement listing: (a) the identity, location, and estimated value of all property, books, records, contracts, and other assets related to and/or appurtenant to the Facility; (b) the names, identities, and contact information (telephone, mailing address, and email address) of all employees, contractors, subcontractors, accountants, attorneys, other personnel, and any other agents providing goods or services to or in connection with the Facility; (c) a complete inventory of the Facility's assets and liabilities, including any ongoing litigation related to the Facility or its operations; and (d) copies of all contracts, licenses, agreements, and service agreements related to the Facility.

43.     Starting thirty (30) days after entry of this Order, and within twenty (20) days after the end of each calendar month thereafter, the Receiver shall file with this Court monthly reports concerning the financial results of the operation of the Receivership Estate.

44.     The Receiver may seek direction from this Court on any matter related to this Order, including, but not limited to, relief from or modification of the provisions of this Order.

45.     The Receiver may seek such other and further orders of this Court as it deems necessary or expedient to carry out its duties and responsibilities under this Order.

46.     The Receiver may resign and be discharged of its responsibilities at any time by giving thirty (30) days' prior written notice to this Court; provided, however, that the Receiver may

petition this Court to approve such resignation and discharge upon shorter notice for good cause shown.

47.     At the completion of its duties set forth in this Order, or at such earlier time as the Receiver has determined that the purposes of this Order may no longer be effectively fulfilled by the Receiver, the Receiver may file a motion seeking to terminate its responsibilities as Receiver and the Court supervision of the Receivership Estate.

48.     Upon the satisfaction and discharge of all indebtedness and obligations secured under the Bond Documents, the Court shall enter an Order, as appropriate, terminating the receivership.

49.     As needed until the Receiver is fully ready to begin exercising his authorities and powers as set forth above, Lessee and Defendants shall avoid harm to the Receivership Estate and ensure the Receiver can carry out its responsibilities as required by this Order.

50.     Lessee, Saint Simons Health Care, LLC and their successors, assigns, agents, employees, members, managers, attorneys, or anyone acting for or in concert with them shall be prohibited from: (i) possessing or managing the Facility (unless requested or approved by the Receiver) and from interfering in any way with the possession or management of the Facility by the Receiver; (ii) collecting, withdrawing, transferring, conveying, concealing, or otherwise disposing of the Collateral, including any revenues and profits derived therefrom, during and pending the appointment of the Receiver; (iii) removing any property from the Facility and from removing, destroying, concealing, changing, or altering in any manner any of the books or records relating to the ownership, possession, or operating of the Facility and other Collateral.

51.     Further, Lessee and Saint Simons Health Care, LLC are required to pay to the Receiver any revenues and other cash collateral in their possession or control derived from the

Facility and other Collateral, and are required to immediately pay and turn over to the Receiver and to perform all other acts necessary to transfer to the Receiver all funds on hand in cash and all funds held in deposit accounts for the benefit of the Facility or arising from the ownership, possession, or operating of the Facility and all accounts, accounts receivable, and any other collectibles, and all keys, books, records, equipment, and all things in any manner related to the ownership, possession, or operation of the Facility. For the avoidance of doubt, and notwithstanding anything to the contrary in this Order, the Trustee shall continue to administer and control all funds and accounts established under Article V of the Indenture pursuant to the terms of the Bond Documents.

52.     Further, Lessee and any other person or entity with notice of this Court's order, is prohibited from prosecuting any claim against the Receiver or the Collateral, other than in this action and only after a proper motion is filed and an order entered allowing such party to file such a claim herein.

53.     All provisions of this Order notwithstanding, this Order shall not provide a basis for exculpation to any person or entity for the liability, obligations, or the like of such person or entity arising out of gross negligence, willful misconduct, bad faith, or fraud.

54.     Lessee shall be entitled to notice of any pleading, motion, notice, or the like filed with the Court.

55.     Notwithstanding any other provision of this Order, Lessee may continue to retain counsel, as Lessee determines, to defend or settle the case of Blanton v. Gordon Oaks Memory Care Community, Bama Oaks Retirement, LLC, Saint Simons Health Care, LLC, Brogdon Family, LLC, Danny Bettis, Christopher Brogdon, and Linda Tiffany, Civil Action No. 2017-901936 (Circuit Court of Mobile County) (the "***Blanton Suit***"). No Receivership Estate Assets shall be used to defend or settle the Blanton Suit. Lessee shall timely serve the Trustee and the Receiver with all

pleadings, notices, or orders in the Blanton Suit. The provisions in this paragraph shall not act as a bar or waiver of the Trustee or the Receiver to intervene in the action on behalf of Lessee or seek to stay any effort to collect or enforce claims against Lessee or obtain any recoveries on behalf of Lessee.

## Effect of Order and Jurisdiction

56.     Except as expressly set forth in this Order, the terms and conditions of the Bond Documents and any documents related to the Bond Documents, including the rights, property, powers, authority, and assets conferred in such documents, remain in full force and effect.

57.     Except as expressly set forth in this Order, nothing in this Order shall act to divest in any way the Trustee of any collateral, property, or asset under the control of the Trustee or enjoin or otherwise prohibit the Trustee from pursuing any other remedies as provided in the Bond Documents. All of the Trustee's claims and causes of action against Lessee, Issuer, and Saint Simons Health Care, LLC shall be preserved and shall not be deemed waived, compromised, released, or prejudiced in any way by this receivership proceeding. This receivership proceeding shall not bar or preclude the Trustee, under the doctrines of collateral estoppel, res judicata, or any other doctrine or preclusion, from asserting or maintaining any claims or causes of action against Lessee, Issuer, or Saint Simons Health Care, LLC, including, but not limited to, any claims or causes of action for recovery of amounts owed under the Bond Documents or proceedings by foreclosure, either non-judicial or judicial, or otherwise to sell the Collateral or any portion of the Collateral.

58.     Nothing in this Order shall relieve Lessee or the Facility of any obligation or liability under any existing judgment, order, or decree.

59.     Until the Receiver is discharged and this receivership is terminated, the Court retains jurisdiction over this matter to: (i) amend, supplement, or delete any provision of this Order; (ii)

enforce compliance with or to punish violations of this Order; and (iii) order any additional actions or remedies as may be appropriate or reasonably necessary.

60.     The reversal or modification on appeal of this Order shall not affect the validity of any actions taken in good faith by the Receiver, the payment of compensation to which the Receiver or the Receiver Affiliates are entitled, or the payment of expenses incurred by the Receiver or the Receiver Affiliates pursuant to this Order.

61.     This Order shall be immediately effective upon its entry and shall continue until further order of this Court.

 DONE and ORDERED the 13th day of  April, 2021.


s/ Kristi K. DuBose
 Hon. Kristi DuBose, Chief Judge
United States District Court for the
Southern District of Alabama

## EXHBIT "A"

All that tract, or parcel of land located in Mobile County, Alabama, more particularly described below (the "*Land*"):

Lot 1, Gordon Oaks, as recorded in Map Book 38, page 13 of the Probate Court records of Mobile County, Alabama. Containing 3.686 acres, more or less.

TOGETHER WITH the benefitting aspects of the Amended and Restated Reciprocal Easement Agreement by and between Mobama Nursing, LLC and Bama Oaks Retirement, LLC, dated January 8, 2008 and recorded in Real Property Book 6317 Page 567 of the records in the Office of the Judge of Probate of Mobile County, Alabama.

TOGETHER WITH all buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land (the "*Facility*"), and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, washers, dryers, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes, which are or shall be attached to said buildings, structures or improvements and all other furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles and personal property of every kind and nature whatsoever located therein, but excluding inventory, now or hereafter owned by Issuer and located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Facility, including all extensions, additions, improvements, betterments, renewals and replacements of any of the foregoing and all the right, title and interest of Issuer in any such furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles and personal property on the land subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposits or payments now or hereafter made by Issuer, all of which are hereby declared and shall be deemed to be fixtures and accessions to the freehold and a part of the Facility as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Security Agreement.

TOGETHER with all easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, in any way belonging, relating or appertaining to the Facility or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Issuer and the reversion and reversions, remainder and remainders, the rents, issues, profits and revenues of the Facility from time to time accruing (including without limitation all payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits and escrow funds related to the Facility), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Issuer of, in and to the same.

TOGETHER WITH the Facility, Gross Revenues (as defined below) and all parts, rights, members and appurtenances thereof (herein referred to collectively as the "*Mortgaged Property*"). "*Gross*

....

***Revenues***" means all revenues, income, receipts, and money (other than proceeds of borrowing) received with respect to the Facility in any period by or on behalf of the Issuer, including, but without limiting the generality of the foregoing, (i) revenues derived from operation of the Facility; (ii) proceeds derived from the Facility with respect to (a) insurance, except to the extent otherwise required by this Indenture, (b) rights to payment for goods sold or leased or for services rendered which are not evidenced by a chattel paper, whether or not they have been earned by performance, (c) securities and other investments, and the income earnings and gains thereon, (d) inventory and other tangible and intangible property, and (e) contract rights and other rights and assets now or hereafter owned, held, or possessed by the Issuer in the Facility; and (iii) rentals received from the leasing of the Facility or units therein or from tangible personal property.