IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BOKF, N.A., as Indenture Trustee,** ) <br>     Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> **BAMA OAKS RETIREMENT, LLC;** ) <br> **SAINT SIMONS HEALTH CARE, LLC;** ) <br> and **THE MEDICAL CLINIC BOARD** ) <br> **OF THE CITY OF MOBILE (SECOND),** ) <br>     Defendants, ) | **Civil Action No. 21-00028-KD-B** |
| **BOKF, N.A., as Indenture Trustee,** ) <br>     Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> **BAMA OAKS RETIREMENT, LLC;** ) <br> **SAINT SIMONS HEALTH CARE, LLC;** ) <br> and **THE MEDICAL CLINIC BOARD** ) <br> **OF THE CITY OF MOBILE (SECOND),** ) <br>     Defendants, ) | **Civil Action No. 21-00029-KD-B** |
| **BOKF, N.A., as Indenture Trustee,** ) <br>     Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> **GORDON JENSEN HEALTH CARE** ) <br> **ASSOCIATION, INC.;** ) <br> **KNOLLWOOD NH, LLC;** ) <br> **CONQUEST HEALTH SYSTEMS, LLC;** ) <br> **MARSH POINTE MANAGEMENT, LLC;** ) <br> and **MEDICAL CLINIC BOARD OF THE** ) <br> **CITY OF MOBILE (SECOND),** ) <br>     Defendants. ) | **Civil Action No. 21-00031-KD-B** |

**ORDER**

This action is before the Court on the Receiver's Motions for Order Approving Final

Accounting, Discharging Receiver, and Granting Related Relief including the request for the

Receiver's and Counsel's fees and expenses incurred during July 2023; Final Accountings; Objections; the Receiver's Response to the Objections, and Notices of Filing of Receiver and Counsel's fees incurred from August 1, 2023 through October 31, 2023 (Civil Action No. 21-00028-KD-B (docs. 228, 228-1, 228-2, 234, 235, 240, 243); Civil Action No. 21-00029-KD-B (docs. 228, 228-1, 228-2, 234, 239, 242); and Civil Action No. 21-00031-KD-B (docs. 253, 253-1, 253-2, 259, 264, 267).

The Motions were heard on November 17, 2023. Upon consideration of the foregoing documents, the evidence[1] and argument presented at the hearing, and for reasons set forth herein and more specifically on the record, the Court orders as follows:

I. <u>Objections</u>

A. Bondholder Jon Bailey objected to the Motion and requested clarification regarding how the fees and expenses of Plaintiff BOKF, as the Indenture Trustee, had increased during the term of the Receiverships. However, as explained by the Receiver, the Trustee's fees and expenses are not subject to the Court's authority nor is oversight of same within the scope of the Receiver's duties and responsibilities.[2] Instead, the Trustee's fees and expenses are subject to

---

[1] Hearing Exhibit 1 (Final Accounting, Civil Action No. 21-cv-00032-KD-B (doc. 253-1); Notices of Service of the Motions, Claims Reports, Orders setting objection period and hearing, Orders continuing the hearing, and the Receiver's reply to the objections to the discharge motion (Civil Action No. 21-00028-KD-B (docs. 230, 231, 233, 241, 242); Civil Action No. 21-00029-KD-B (docs. 230, 231, 233, 240, 241); Civil Action No. 21-00031-KD-B (docs. 255, 256, 258, 265, 266).

[2] The Receiver stated that the "Indenture Trustee requested the Receiver report the amount of the Indenture Trustee's fees and expenses … so that bondholders could estimate the funds the Indenture Trustee may ultimately distribute to bondholders." Civil Action No. 21-00028-KD-B (doc. 240); Civil Action No. 21-00029-KD-B (doc. 239); Civil Action No. 21-00031-KD-B (doc. 264). (Receiver's Reply, p. 7).

the contract between the Indenture Trustee BOKF and the bondholders, i.e., the Bond Documents. The Court explained in the Orders appointing the Receiver that the Bond Documents remain in effect.[3] Accordingly, Bailey's objection is overruled.

B. Ashanti Franklin, a former employee of the Skilled Nursing Facility Receivership,[4] filed an objection to the Motion. Franklin had previously filed a charge with the Equal Employment Opportunity Commission based upon alleged sex discrimination, sexual assault, sexual harassment, and retaliation. Franklin received a Notice of Rights from the EEOC but shortly thereafter received notice that the Facility was in receivership. Her unliquidated claim for discrimination was assigned no value in the Receiver's Claims Report, indicating she would receive nothing for her claim. Thus, Franklin objected to the Final Settlement and Discharge and requested an equitable distribution that recognized and valued her claim. The Receiver denied Franklin's claim, but then applying his reasonable business judgment and factors considered by bankruptcy courts when deciding whether to approve a settlement,[5] negotiated a settlement of

---

[3] "Except as expressly set forth in this Order, the terms and conditions of the Bond Documents and any documents related to the Bond Documents, including the rights, property, powers, authority, and assets conferred in such documents, remain in full force and effect." Civil Action No. 21-00028-KD-B (doc. 42, ¶ 56); Civil Action No. 21-00029-KD-B (doc. 40, ¶ 56); Civil Action No. 21-00031-KD-B (doc. 43, ¶ 53). Two of the Orders state that the "attorneys' fees and costs and other fees, costs, and expenses incurred by the Trustee are due and payable under the Bonds Documents, … said amount also being secured by the Bond Documents and Collateral." Civil Action No. 21-00028-KD-B (doc. 42, p. 5); Civil Action No. 21-00029-KD-B (doc. 40, p. 5).

[4] The records are unclear as to the Facility where Franklin worked. However, in the Reply to the Objection, the Receiver states that she worked at the Skilled Nursing Facility. Thus, payment for the settlement should be made from that Receivership.

[5] The Receiver considered Franklin's probable success in litigation; any difficulties of collection; the complexity, expense, inconvenience, and delay should there be a contested evidentiary hearing to decide the merits of her claim and the equity of treating her as a general

$20,000.00 to be paid from the Skilled Nursing Facility Receivership. The Receiver determined that settlement of this claim was fair and reasonable. Also, the Receiver decided that in this circumstance, Franklin's claim was appropriately treated as an actual and necessary operational expense of the Skilled Nursing Facility. See Receiver's Reply (Civil Action No. 21-00028-KD-B (doc. 240); Civil Action No. 21-00029-KD-B (doc. 239); Civil Action No. 21-00031-KD-B (doc. 264)). The Receiver and counsel for Franklin were present at the hearing.

The Orders appointing the Receiver provide that he may settle, defend, or compromise, claims as necessary, in his sole business judgment, to protect, maintain, enhance, or preserve the Receivership Estates.[6] Because the Receiver acted within the scope of his court-ordered authority and provided the Court with sufficient information showing how he reached his decision, the Court approves the settlement as fair and reasonable.

II. The Receiver's fees and expenses for July, August, September, October 2023

A. Skilled Nursing Facility Receivership

The Receiver seeks approval of fees in the amount of $7,877.50 plus $104.34 for expenses for a total of $7,981.84 for July, fees in the amount of $9,077.50 plus $104.87 for expenses for a total of $9,182.37 for August, fees in the amount of $917.50 plus $104.34 for expenses for a total of $1,021.84 for September, and fees in the amount of $652.50 plus $104.34 for expenses for a total of $756.84 for October. (Civil Action No. 21-00031-KD-B, doc. 253-2, p. 2-4; doc. 267, p. 7-10, 14-16, 20-22). In support, the Receiver provides a detailed accounting

---

unsecured creditor; and the interests of the creditors, i.e., the bondholders, in a quick and cost-efficient resolution.

[6] Civil Action No. 21-00028-KD-B (doc. 42, ¶ 8 xv - xviii); Civil Action No. 21-00029-KD-B (doc. 40, ¶ 8 xv - xviii); Civil Action No. 21-00031-KD-B (doc. 43, ¶ 8 xv - xviii).

of the services provided by the Receiver or members of the Receiver's LLC (Id.)

Upon consideration of the Receiver's request, the detailed accounting of the services provided, the argument and evidence received at the hearing, and the Order appointing the Receiver, the request is approved. Accordingly, the Receiver is directed to pay, without further court order and at such times as the Receiver determines in his discretion that funds are available, compensation in the amount of $18,525.00 for professional services rendered by the Receiver in performing his duties and obligations during the months of July, August, September, and October 2023 plus expenses in the amount of $417.89 for a total of $18,942.89.

B. Assisted Living Facility Receivership

The Receiver seeks approval of fees in the amount of $3,225.25 plus $74.33 for expenses for a total of $3,299.58 for July, fees in the amount of $5,143.25 plus $73.04 for expenses for a total of $5,216.29 for August, fees in the amount of $253.75 plus $73.04 for expenses for a total of $326.79 for September,[7] and fees in the amount of $225.75 plus $73.04 for expenses for a total of $298.79 for October. (Civil Action No. 21-00028-KD-B, doc. 228-2, p. 9-11, doc. 243, p. 11-13, 17-19, 23-25, 26-28). In support, the Receiver provides a detailed accounting of the services provided by the Receiver or members of the Receiver's LLC (Id.).

Upon consideration of the Receiver's request, the detailed accounting of the services provided, the argument and evidence received at the hearing, and the Order appointing the

---

[7] For August and September, the Receiver invoiced the Assisted Living Facility Receivership and the Independent Living Facility Receivership in the same invoice ("Re: Bama Oaks (Gordon Oaks AL and IL)") but did not allocate the fees and expenses. For October, the Receiver allocated his fees and expenses 70% to the ALF Receivership and 30% to the ILF Receivership. Since the Court cannot ascertain whether all the services for August and September were performed for one of the Receiverships, the fees and expenses have been allocated 70% to the ALF Receivership and 30% to the ILF Receivership.

Receiver, the request is approved. Accordingly, the Receiver is directed to pay, without further court order and at such times as the Receiver determines in his discretion that funds are available, compensation in the amount of $8,848.00 for professional services rendered by the Receiver in performing his duties and obligations during the months of July, August, September, and October 2023 plus expenses in the amount of $293.45 for a total of $9,141.45.

C. Independent Living Facility Receivership

The Receiver seeks approval of fees in the amount of $1,382.25 plus $31.86 for expenses for a total of $1,414.11 for July, fees in the amount of $2,204.25 plus $31.30 for expenses for a total of $2,235.55 for August, fees in the amount of $108.75 plus $31.30 for expenses for a total of $140.05 for September, and fees in the amount of $96.75 plus $31.30 for expenses for a total of $128.05 for October. (Civil Action No. 21-00029-KD-B, doc. 228-2, p. 6-8; doc. 242, p. 11-13, 17-19, 23-25, 26-28). In support, the Receiver provides a detailed accounting of the services provided by the Receiver or members of the Receiver's LLC (Id.).

Upon consideration of the Receiver's request, the detailed accounting of the services provided, the argument and evidence received at the hearing, and the Order appointing the Receiver, the request is approved. Accordingly, the Receiver is directed to pay, without further court order and at such times as the Receiver determines in his discretion that funds are available, compensation in the amount of $3,792.00 for professional services rendered by the Receiver in performing his duties and obligations during the months of July, August, September, and October 2023 plus expenses in the amount of $125.76 for a total of $3,917.76.

III. Receiver's counsel's fees and expenses for July, August, September, October 2023

A. Skilled Nursing Facility Receivership

The Receiver seeks approval for compensation for services rendered and expenses

6

incurred for counsel to the Receiver. Specifically, $1,666.00 for services by Baker Donelson Bearman Caldwell & Berkowitz P.C. (Baker) and $10,555.50 for services by Epstein Becker & Green P.C. (Epstein) for a total of $12,221.50 for July; $539.00 for services by Baker and $16,316.00 for services by Epstein for a total of $16,855.00 for August; $1,862.00 for services by Baker plus expenses of $720.75 and $10,112.50 for services by Epstein plus expenses of $636.58 for a total of $13,331.83 for September; and $4,508.00 for services by Baker and $5,391.00 for services by Epstein plus expenses of $505.67 for a total of $10,404.67 for October (Civil Action No. 21-00031-KD-B, doc. 253-3; doc. 267, p. 30-34, 42-43, 44-50, 55-56, 59-62, 70-71).

Upon consideration of the Receiver's request, counsel's detailed time records which identify the attorney or paralegal performing the services, the time expended, the hourly rate, and the work performed, and the argument and evidence received at the hearing, the request is approved. Accordingly, the Receiver is directed to pay, without further court order and at such times as the Receiver determines in his discretion that funds are available, the compensation requested for Baker and Epstein.

B. <u>Assisted Living Facility and the Independent Living Facility Receiverships</u>

The Receiver seeks approval for compensation for services rendered and expenses incurred for counsel to the Receiver. Specifically, $1,029.00 for services by Baker and $7,250.00 for services by Epstein for a total of $8,279.00 for July; $882.00 for services by Baker and $14,525.50 for services by Epstein plus expenses of $49.61 for a total of $15,457.11 for August; $1,813.00 for services by Baker plus expenses of $720.75 and $1,419.00 for services by Epstein plus expenses of $636.59 for a total of $4,589.34 for September; and $4,557.00 for services by Baker and $5,356.50 for services by Epstein plus expenses of $505.66 for a total of $10,419.16

(Civil Action No. 21-00028-KD-B, doc. 228-3; doc. 243, p. 35-41, 51-54, 57-58, 63-69); (Civil Action No. 21-00029-KD-B, doc. 228-3, doc. 242, p. 35-41, 51-54, 57-58, 63-69).

Counsel allocates its fees and expenses between the Assisted Living Facility Receivership and the Independent Living Facility Receivership by a ratio of 70% to 30%, respectively. Accordingly, counsel's fees and expense in the total amount of $38,744.61 are allocated to the Assisted Living Facility Receivership in the amount of $27,121.22 and to the Independent Living Facility Receivership in the amount of $11,623.39.

Upon consideration of the Receiver's request, counsel's detailed time records which identify the attorney or paralegal performing the services, the time expended, the hourly rate, and the work performed, and the argument and evidence received at the hearing, the request is approved. Accordingly, the Receiver is directed to pay, without further court order and at such times as the Receiver determines in his discretion that funds are available, the compensation requested for Baker and Epstein.

IV. <u>The Receivers' request for additional fees for services for the Skilled Nursing Facility Receivership</u>

The Order appointing the Receiver for the Skilled Nursing Facility Receivership states as follows:

> Notwithstanding this fee schedule, and in accordance with Pierce's testimony of what is a reasonable management fee, in no event shall the Receiver's compensation (and any outsourced financial work) exceed 5% of the gross revenue.

(Civil Action No. 21-00031-KD-B, doc. 43).

After appointment, the Receiver hired his affiliate HMP Senior Solutions LLP as the day-to-day manager of the Skilled Nursing Facility. He sought clarification whether the limit on compensation applied only to the Receiver's fees and expenses or applied to "a combination of

8

both the Senior Solutions Management Fee and the Receiver's fees and expenses." (doc. 92).

In response, the Court explained:

> The Court's intent was that all fees to manage the Facility would be capped at 5%. The Court considered the Receiver's fee to be part of the management fees. To expend more than 5% for management of the Facility will require an amendment to the Order appointing the Receiver, for good cause shown.

(Doc. 92).

Previously, the Receiver's fees had been approved and the Receiver did not accrue his fees from March 2021 to July 2021 (Civil Action No. 21-00031-KD-B, doc. 253, p. 14). With this clarification, the Receiver began to accrue his fees and later, the fees of another affiliate HMP Metric, LLC, which provided information technology and telephone services.[8] The expenses of the Receiver and Senior Solutions and the fees of Senior Solutions were approved for payment.

After the Skilled Nursing Facility was sold in October 2022, Senior Solutions no longer provided day-to-day management services and HMP Metrics no longer provided information technology and telephone services. From November 2022 to the present, only the Receiver submitted a request for fees. The fees were approved; therefore, the Receiver did not accrue any fees during that time.

The Receiver now requests approval of accrued fees up to the 5% of the gross revenue of the Skilled Nursing Facility Receivership (Civil Action No. 21-00031-KD-B, doc. 253, p. 5). The Receiver reports that the gross revenue is $12,716,345.00 (Civil Action No. 21-00031-KD-B, doc. 253, p. 16). Thus, the maximum payment allowable is $653,817.25.

---

[8] These fees are addressed in Section VI.

To determine the maximum amount remaining for payment of the Receiver's accrued fees, the Court makes the following calculations:

| | |
|---|---|
| Total approved fees and expenses - | $604,912.81 |
|    - HMP Metrics fees paid | $8,540.08 |
|    - Receiver's expenses paid | $57,945.52[9] |
|   Sub-total | $538,427.21 |
|   + June fees approved | $2,832.50 |
| Total Receiver's fees paid | $541,269.71 |
| | |
| Five (5%) per cent of gross revenue | $653,817.25 |
| - Total Receiver's fees paid | $541,269.71 |
| | $94,557.54 |
| - Fees approved for July – October[10] | $18,525.00 |
| | $76,032.54 |

Thus, the Court finds that allowing fees for the Receiver up to the remaining $76,032.54 is consistent with the Order appointing the Receiver, as clarified. In consideration of the fees requested, the hours expended and the work performed by the Receiver and the necessary remaining work to be performed by the Receiver, the Court finds that the request is supported.

---

[9] The Receiver included the expenses for June and July in his expense total of $58,364.48. At the hearing, the Court deducted the expenses for June ($314.62) and July ($104.34) to arrive at $57,945.52.

[10] The Court approved the Receiver's fees for July through October. See Section II. The fees approved for July ($7,877.50), August ($9,077.50), September ($917.50), and October ($652.50), total $18,525.00.

(doc. 253, p. 32-33).[11]

V. <u>The Receiver's accrued fees and expenses for the Assisted Living Facility Receivership and the Independent Living Facility Receivership</u>

For the Assisted Living Facility and the Independent Living Facility Receiverships, the parties submitted a stipulation of facts wherein the parties stipulated that appointment of a receiver was not opposed. They jointly moved for entry of a proposed Order Appointing Receiver (Civil Action No. 21-00028-KD-B, docs. 34, 35); (Civil Action No. 21-00029-KD-B, docs. 32, 33). The motions were heard and granted. The Court entered the proposed Orders Appointing Receiver (Id., doc. 42; Id., doc. 40). As to the Receiver's fee, the Orders set forth as follows:

> 37. Commencing on the date of entry of the Receivership Order, for its services as Receiver, the Receiver shall receive from the Receivership Estate the greater of Seven Thousand ($7,000) per month (the "Minimum Monthly Fee") or five (5%) percent of Net Revenues (as defined herein) (the "Base Management Fee," and collectively with the Minimum Monthly Fee, the "Management Fee").

(Civil Action No. 21-28, doc. 42).

> 37. Commencing on the date of entry of the Receivership Order, for its services as Receiver, the Receiver shall receive from the Receivership Estate the greater of Seven Thousand ($3,000) per month (the "Minimum Monthly Fee") or five (5%) percent of Net Revenues (as defined herein) (the "Base Management Fee," and collectively with the Minimum Monthly Fee, the "Management Fee").

(Civil Action No. 21-29, doc. 40).

---

[11] The Receiver reports that he has expended "622.55 hours separate and apart from the day-to-day management of the Skilled Nursing Facility" and sets out the work performed, including but not limited to "preparing analysis and reporting related to, among other things, allocation of the sale proceeds, the Claims Report, and the Final Accounting; providing oversight and directions to the manager of the Facility; preparing and analyzing financial reports; preparing forward-looking cash flow analyses and projections; preparing and amending budgets, and assisting in the marketing, sale, and transition of the Skilled Nursing Facility, as well as post-closing prorations with the buyer and the Final Accounting.

During the Receiverships, the Assisted Living Facility and the Independent Living Facility failed to generate net revenues. Thus, the Receiver was allowed the Minimum Monthly Fee. As a result, he incurred and accrued the fees that exceeded the Minimum Monthly Fee. The Receiver now requests approval of his accrued and unpaid fees beyond the 5% of Net Revenues. (Civil Action No. 21-00028-KD-B, doc. 228, p. 16-17, 33-35 (Civil Action No. 21-00029-KD-B, doc. 228, p. 16-17, 33-35). As set forth more specifically on the record, the Court finds no legal or equitable grounds for allowing these additional fees.[12] Accordingly, the Receiver's request is DENIED.

VI. <u>Incurred expenses of HMP Metrics, LLC</u>

The Receiver requests allowance of the unpaid fees for his affiliate, HMP Metrics, LLC. Specifically, $32,860.48 for the Skilled Nursing Facility and $5,807.52 for the Assisted Living Facility (Civil Action No. 21-00028-KD-B, doc. 228, p. 37 (Civil Action No. 21-00029-KD-B, doc. 228, p. 37). The Receiver asserts that HMP Metrics performed information technology and telephone services that if done by a third-party would have been paid as an ordinary operating expense. The Receiver states that changing these services to HMP Metrics was an exercise of his business judgment, which saved the facilities approximately $55,000 (doc. 253, p. 36-37, 48-49).

The Receiver asserts that these services are an ordinary operating expense which the Skilled Nursing Facility and Assisted Living Facility would have incurred even if a company not

---

[12] The Receiver incorrectly states that the Court authorized accrual of fees to be "paid at such time as the Receiver's fees no longer exceeded 5% of gross revenue." The Orders approving the Receiver's fees for the Assisted Living and Independent Living Facilities state: "The Receiver also states that the Facility's books were not closed at the conclusion of the Application Periods. As a result, he seeks approval of fees in the amount of $7,000 [$3,000.00], the Minimum Monthly Fee, but reserves the right to apply for payment of additional fees, based upon the Net Revenues for the periods ending in …".

affiliated with the Receiver had performed the services. Upon consideration, the Court agrees. Accordingly, the unpaid fees of $32,860.48 are allowed as an expense of the Skilled Nursing Facility Receivership and unpaid fees of $5,807.52 are allowed as an expense of the Assisted Living Facility Receivership.

    VII. Reservation of funds for remaining expenses

The Receiver initially sought authorization to reserve $130,000 for the fees and expenses of the Receiver and his professionals for services to be performed after the Final Accounting is approved, including fees and expenses incurred in making allowed distributions and filing the Notice of Final Disbursement. The reserve amount of $130,000.00 was included in the Final Accounting.

At the hearing, the Receiver orally amended his request. He now seeks authorization to reserve $100,000.00, and to amend the Final Accounting accordingly. For reasons more specifically set forth on the record, the request is approved. The Receiver is authorized to reserve $100,000.00 for future fees and expenses of the Receiver and his professionals to finalize and close the Receivership Estates. Any unused portion of the reserve shall be distributed to the Indenture Trustee.

    VIII. Final Accounting

The Receiver provided the Court with a Final Accounting of the proceeds of the sale of substantially all the assets, the post-closing operating inflows and outflows, the estimated proceeds, and the estimated disbursements to the Indenture Trustee, Receiver, and Receiver's professionals through August 25, 2023. See Hearing Exhibit 1; see also Civil Action No. 21-00028-KD-B (doc. 228-1); Civil Action No. 21-00029-KD-B (doc. 228-1); and Civil Action No. 21-00031-KD-B (doc. 253-1). During the hearing, and as set forth on the record, several

amendments to the Final Accounting and an amendment to the Claims Report to reflect the settlement with an objector, were proposed and approved. The Receiver stated that an Amended Final Accounting including the amendments approved at the hearing, and an Amended Claims Report, will be filed with the Notice of Final Disbursement. Accordingly, and for reasons more specifically set forth on the record, the Final Accounting, as amended, is approved.

IX. Conclusion

Upon consideration of the foregoing, and for reasons more specifically set forth at the hearing, the Court finds as follows:

> a. the Receiver has fully and properly administered the Receivership Estates in good faith, consistent with the duties and obligations set forth in the Orders appointing the Receiver, and in the best interests of the Receivership Estates;
>
> b. the Facilities have been sold and no other or further material assets comprising the Receivership Estates remain to be administered;
>
> c. the Receiver's and Receiver's professionals' approved and paid fees and expenses were reasonable and necessary and incurred in the best interests of the Receivership Estates;
>
> d. the Receiver has properly addressed the claims asserted against the Receivership Estates as reflected in the Claims Report, as amended; and
>
> e. the Indenture Trustee is entitled to the funds remaining for distribution based upon its security interest and liens upon substantially all the assets of the Receivership Estates and the proceeds of such assets.

Accordingly, the Motions for Order Approving Final Accounting and Discharging the Receiver are **GRANTED,** and the Court orders as follows:

> a. the Claims Report and proposed treatment of claims set forth in the Claims Report and Discharge Motion, as amended at the hearing, are approved, and the Receiver shall make the distributions as provided in the Claims Report, as

amended;

b. the Receiver is authorized to pay itself $32,860.00 for the services of HMP Metrics from the Skilled Nursing Receivership Estate;

c. the Receiver is authorized to pay itself $5,807.52 for the services of HMP Metrics from the Assisted Living Receivership Estate;

d. the Receiver is entitled to additional compensation in the amount of $76,032.54 from the Skilled Nursing Receivership Estate;

e. the Final Accounting attached as Exhibit A to the Motion, as amended at the hearing to allow a reserve of $100,000 for fees and expenses of the Receiver and his professionals, is approved;

f. the Receiver is authorized to make the remaining distributions in the Final Accounting from the Receivership Estates and shall file a Notice of Final Disbursement (including notice of actual versus estimated disbursements), as soon as practicable, but no later than **January 31, 2024,** unless Court approval is obtained.

g. At the time of filing the Notice of Final Disbursement, the Receiver shall be discharged from any further duties, responsibilities, or obligations under or pursuant to the Receivership Orders;

h. the disbursements made by the Receiver as set forth in the Final Accounting, as amended, are with prejudice, not subject to disgorgement, claw back or refund of any kind, binding on all creditors and parties in interest, and all creditors and parties in interest are barred from asserting claims against the Receiver, the Receivership Estates, or any recipients of the distributions set forth in the Final Accounting on account of the distributions set forth in the Final Accounting;

i. upon the discharge of the Receiver, the Receivership Estates established pursuant to the Receivership Orders shall be terminated; the Receivership Estates shall be deemed fully administered and liquidated; and the Receiver's authority to manage, operate, or control the assets of the Receivership Estates shall be terminated, without further order of this Court;

j. upon discharge of the Receiver, the Receiver and Receiver's professionals shall

be relieved of any further obligations or duties with respect to the assets of the Receivership Estates, without further order of this Court;

k. upon discharge the Receiver, the Receiver and all professionals retained by the Receiver, including Healthcare Management Partners, LLC, HMP Senior Solutions, LLC, Waller Lansden Dortch & Davis, LLC, Epstein Becker & Green, P.C., Holland & Knight, LLC, and Baker Donelson Bearman Caldwell & Berkowitz, P.C., shall be fully and forever released and discharged from any and all liability for acts taken pursuant to and in good faith compliance with the Receivership Orders, including, but not limited to, any and all claims, cross-claims, counterclaims, causes, damages, and actions, of every kind, character, and description, whether direct or indirect, known or unknown, in law or in equity, which any person, entity or party has or will have against the Receiver or any professionals retained by the Receiver or their respective affiliates on account of, arising, or resulting from, or in any manner incidental to, the receiverships established by the Receivership Orders, the Receiver's actions or inactions in his capacity as Receiver, the Receiver's professionals actions or inactions in representing the Receiver, the Receiver's possession or use of property of the Receivership Estates, the administration of the Receivership Estates, or any other acts or omissions of the Receiver or the Receiver's professionals;

l. upon discharge the Receiver, all creditors, investors, and other parties in interest shall be permanently and forever barred, restrained and enjoined from taking any action to impose or seeking to impose liability on the Receiver, all professionals retained by the receiver, Healthcare Management Partners, LLC, and HMP Senior Solutions, LLC, without first obtaining relief to do so from the Court and only upon a finding by this Court that the Receiver or said persons acted or failed to act as a result of bad faith or gross negligence or in reckless disregard of the Receiver's or said person's professional duties;

m. upon discharge of the Receiver, the Receiver may dispose of and destroy all records of the Receivership Estates in the possession and control of the Receiver or his agents, after the expiration of two (2) years from the date of the Receiver's discharge;

n. that the Receiver, as principal, and Liberty Mutual Insurance Company, as surety, shall be released and discharged from the Bond of Receiver upon the filing of the notice of final disbursement;

o. the Court retains jurisdiction over any and all matters arising out of or relating to this Order or its enforcement; and

p. the Receiver shall serve a copy of this Order on all parties and interested persons and entities served with the Motion.

DONE and ORDERED this the 20th day of November 2023.

                                                s/ Kristi K. DuBose
                                                KRISTI K. DuBOSE
                                                UNITED STATES DISTRICT JUDGE